IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

DANIEL E. TAYLOR, )
)
    Petitioner, )
)
) CIV-09-323-HE
v. )
)
GREG WILLIAMS, Warden, )
)
    Respondent. )

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, has filed this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Petitioner is challenging the convictions for Trafficking in Illegal Drugs (methamphetamine) after former felony conviction, Possession of Controlled Dangerous Substance (marijuana), subsequent offense, after former felony conviction, and Possession of Paraphernalia entered following a jury trial in the District Court of Custer County, Case No. CF-2005-402. Petitioner is serving an aggregate 20-year term of imprisonment for these offenses. Respondent has responded to the Petition and filed the relevant state court records, including a copy of the original record compiled in the District Court of Custer County (hereinafter "OR__") and a transcript of the jury trial (hereinafter "TR__"). The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Petition be denied.

I. Background

On October 6, 2005, law enforcement officials executed a search warrant at an automobile repair shop co-owned by Petitioner and his brother, Tommy Taylor, in Weatherford, Oklahoma. OR 14-16. During the search of the business, officers seized marijuana and scales as evidence. The officers also found a copy of the rules and conditions of Petitioner's supervised probation. The rules specifically granted law enforcement officials permission to search the Petitioner's residence based on reasonable suspicion that Petitioner was engaged in criminal activity. The officers then conducted a search of Petitioner's residence. During the search of Petitioner's bedroom at the residence, additional evidence was seized. As a result of these searches, Petitioner was charged with three drug-related offenses in an information filed in the District Court of Custer County, on October 7, 2005. OR 5-6. One co-defendant, Ms. Clark, was also charged with drug-related offenses in this information. In a supplemental information, Petitioner was charged with having committed these offenses after prior convictions for possession of methamphetamine with intent to distribute, possession of marijuana with intent to distribute, and conspiracy to manufacture a controlled dangerous substance (methamphetamine). OR 7. An amended information was filed in the district court on October 11, 2006.

Petitioner retained counsel and filed a pretrial motion seeking to suppress the evidence seized in the searches. OR 42-43. A hearing was conducted concerning the motion to suppress, and the motion was overruled. OR 45. A jury trial was conducted in the case on October 26, 2006. Petitioner renewed his motion to suppress during the trial. TR 37-38. The

jury found Petitioner guilty of the three charges. OR 67, 107, 108, 109.  Petitioner was sentenced on November 27, 2006, consistent with the jury's sentencing recommendation to a 20-year term of imprisonment for the trafficking conviction, a concurrent 3-year term of imprisonment for the felony marijuana possession conviction, and a concurrent 1-year term of imprisonment for the misdemeanor drug paraphernalia conviction. OR 117, 121-122. On February 11, 2008, the district court recommended that Petitioner's application to appeal his convictions out-of-time be granted. OR 173-175.  The OCCA granted the application to appeal out-of-time. OR 178-180.

In his direct appeal, Petitioner asserted that his Fourth and Fourteenth Amendment rights were violated by the search and seizure conducted at the Petitioner's business and at his residence.  Petitioner contended, as he did in his pretrial motion to suppress, that the search warrant was invalid because the date on the warrant authorized a search of Petitioner's business on October 7, 2005, when the search was actually conducted on October 6, 2005. Petitioner also asserted that the warrantless search of his residence was unconstitutional where neither consent or exigent circumstances were established. Petitioner further asserted that even if he waived his Fourth Amendment rights under the rules of his probation there was no reasonable suspicion of Petitioner's involvement in criminal activity to support the search.  In a second claim, Petitioner asserted that prosecutorial misconduct deprived him of a fair trial.  Response, Ex. 1 (Brief of Appellant).  Petitioner based this claim on the prosecutor's closing argument in which the prosecutor stated, while referring to a jury instruction regarding the evaluation of witness credibility, "You have two seasoned officers

3

on the stand who give [sic] you testimony about the items that were found .... Investigator Daniel is doing his job.... That is a very important instruction, and you have two officers who are just doing their job. What motivation do they have not to tell the truth?" TR 218-219.

In a summary opinion, the Oklahoma Court of Criminal Appeals ("OCCA") affirmed Petitioner's convictions and sentences. Response, Ex. 3. The court found with respect to Petitioner's first claim that the trial court did not abuse its discretion in denying Petitioner's motion to suppress. As to Petitioner's claim of prosecutorial misconduct, the OCCA applied a "plain error" standard of review because Petitioner had not objected to the prosecutor's closing argument. With respect to this claim, the court found that Petitioner had "shown no prejudice and the improper comments in this case did not rise to the level of plain error." Response, Ex. 3, at 2.

Petitioner now asserts in the Petition the same claims raised in his direct appeal.[1] In response, Respondent contends that Petitioner is not entitled to habeas relief.

II. Standard of Review

The standard for reviewing Petitioner's claims is prescribed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under this standard, habeas relief may be awarded if the state appellate court's ruling was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

---

[1] The Petition itself appears to present only a portion of the issues raised in Petitioner's direct appeal. However, it is clear from the allegations in the Petition and the arguments presented in Petitioner's "Objection to State Response to Habeas Corpus," which is construed as Petitioner's reply to the response, that Petitioner is raising the same grounds for relief as he raised in his direct appeal.

4

States." 28 U.S.C. § 2254(d)(1). Under this standard, federal courts must apply a "level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams v. Taylor, 529 U.S. 362, 386 (2000)(quoting H. R. Conf. Rep. No. 104-518, p. 111 (1996)). If there is no clearly established federal law in Supreme Court cases involving facts that are closely related or similar to those in the case being reviewed, the court need not assess whether the state court's holding was "contrary to" or an "unreasonable application" of established federal law. House v. Hatch, 527 F.3d 1010, 1016-1017 (10th Cir. 2008)(interpreting Carey v. Musladin, 549 U.S. 70 (2006)). Where the Supreme Court's "cases give no clear answer to the question presented, ...., it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law," and habeas "relief is unauthorized" under the explicit language of 28 U.S.C. § 2254(d)(1). Wright v. Van Patten, 552 U.S. 120, 128 S. Ct. 743, 747 (2008)(internal quotation and citation omitted).

If "the threshold question as to the existence of clearly established federal law" is answered affirmatively, then the reviewing court must determine whether the state court decision is either contrary to or an unreasonable application of that law. House, 527 F. 3d at 1010, 1018. A state court decision is "contrary to" established Supreme Court precedent if the state court either (1) reached a conclusion that contradicts governing Supreme Court precedent or (2) reached a conclusion different from the Supreme Court on materially indistinguishable facts. Williams, 529 U.S. at 405-406, 413.

A state court decision involves an "unreasonable application" of Supreme Court

precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 407. See Price v. Vincent, 538 U.S. 634, 640-641 (2003).  With respect to the "unreasonable application" requirement, "it is the habeas applicant's burden to show that the state court applied [the Supreme Court precedent] to the facts of his case in an objectively unreasonable manner," not merely that the state court decision applied the Supreme Court case incorrectly. Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)(*per curiam*). "[W]hether a state court's decision was unreasonable must be assessed in light of the record the [state appellate] court had before it." Holland v. Jackson,  542 U.S. 649, 652 (2004)(*per curiam*)(citations omitted).

As to any factual issues raised in the Petition, the court must determine whether the state appellate court's decision was based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  In this regard, AEDPA mandates that factual findings made by a state trial or appellate court are presumptively correct and may be rebutted only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

III. Fourth Amendment Violation

Petitioner contends in ground one of the Petition that his Fourth Amendment rights were violated when evidence was introduced at his trial which was seized during a search of his business and a subsequent search of his residence.  Petitioner contends that the law enforcement officers executed a search warrant at his business on October 6, 2005, and that

the search warrant was invalid because it was dated October 7, 2005. Petitioner also contends that the search of his residence was unconstitutional because it was based solely on evidence obtained as a result of the illegal search of the business. Respondent contends that Petitioner is not entitled to habeas relief concerning this claim because Petitioner received a full and fair opportunity in the state courts to litigate his Fourth Amendment claim.

In Stone v. Powell, 428 U.S. 46 (1976), the Supreme Court addressed the issue of whether state prisoners may assert in a federal habeas proceeding a violation of the Fourth Amendment with respect to the admission of evidence seized in a search. The Court reasoned that the purpose of the exclusionary rule was "to discourage law enforcement officials from violating the Fourth Amendment by removing the incentive to disregard it," and that this goal would not be enhanced "if there were the further risk that a conviction obtained in state court and affirmed on direct review might be overturned in collateral proceedings often occurring years after the incarceration of the defendant." Powell, 428 U.S. at 492-493. Further, the Supreme Court found that any benefit from allowing habeas review of a search-and-seizure claim would be outweighed by the costs to other values promoted by the criminal justice system. Id. at 493-494. Thus, the Court concluded that where a state has provided "an opportunity for full and fair litigation of a Fourth Amendment claim," a state prisoner may not obtain habeas relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial. Id. at 494.

The "opportunity for full and fair consideration" portion of the Stone principle "includes, but is not limited to, the procedural opportunity to raise or otherwise present a

Fourth Amendment claim." Gamble v. Oklahoma, 583 F.2d 1161, 1165 (10th Cir. 1978). "It also includes the full and fair evidentiary hearing contemplated by Townsend [ v. Sain, 372 U.S. 293 (1963)]. Furthermore, it contemplates recognition and at least colorable application of the correct Fourth Amendment constitutional standards." Id.

Petitioner contends that he did not have a full and fair opportunity to litigate his Fourth Amendment claim in state court because the trial court failed to articulate factual findings or a legal basis for its denial of the motion to suppress. As Petitioner suggests, the record shows the trial court did not make written factual findings with respect to its ruling on the motion to suppress and only indicated in a minute order that the motion was overruled. OR 45. However, Petitioner was given a hearing on his motion to suppress, and the record shows that the trial court heard the arguments of Petitioner's counsel and the prosecutor prior to ruling on the motion to suppress. Petitioner was also able to fully brief and argue his Fourth Amendment claim in his direct appeal despite the trial court's meager ruling. Although the OCCA did not express a rationale based on Supreme Court precedent for its rejection of Petitioner's Fourth Amendment claim, this deficiency does not indicate the court did not fully consider Petitioner's Fourth Amendment claim. Petitioner does not point to any Supreme Court precedent that is inconsistent with the trial court's ruling or the OCCA's decision.

Considering all of the circumstances present herein, the record shows that Petitioner was given an opportunity for full and fair consideration of his motion to suppress the evidence seized in his business and residence prior to trial and was given full and fair

consideration of his Fourth Amendment claim in his direct appeal. Although no transcript of the motion to suppress hearing was made, it is apparent from the written motion filed by Petitioner that the issues raised during the hearing on Petitioner's motion to suppress included the validity of the search of Petitioner's business and residence. Accordingly, under Stone, Petitioner is barred from relitigating his Fourth Amendment claim in ground one of the Petition in this habeas proceeding, and Petitioner is not entitled to habeas relief concerning the claim asserted in ground one.

Even if Stone does not bar habeas review of the merits of Petitioner's Fourth Amendment claim, the claim has no merit. Petitioner admitted in his appellate brief that law enforcement officers filed an "amended affidavit" indicating that a clerical error in typing the dates appearing on the affidavit and the search warrant had occurred. This "amended affidavit" appears in the public record of the Petitioner's criminal case. The affiant, Mr. Joey Bales, states that

> on October 6th, 2005, your affiant presented magistrate Jill Weedon an affidavit for a search warrant, which contained a pre-typed date on the line for the judge to sign. This pre-typed date was dated October 7, 2005 and should have been October 6, 2007. This warrant was authorized and executed on October 6, 2005.

OR 34.

During Petitioner's trial a law enforcement officer testified that "Joey Bales typed in the wrong date. Yes, he did. We took that to the judge and got it all corrected as soon as we found out about it." TR 116. This officer testified at Petitioner's trial that the warrant was

9

"dated the 7th" but that the search occurred on "the 6th." TR 116-117.  In an ensuing bench conference, the trial judge stated on the record that "[t]here's been a previous ruling [regarding the incorrectly dated search warrant] that that was an error." TR 117.

In an unpublished decision rendered by the Tenth Circuit Court of Appeals involving a federal defendant, the court reviewed the issue of whether the absence of the issuing judge's initials on a date changed in a search warrant required suppression of evidence under Fed. R. Civ. P. 41, which sets forth the procedural requirements for the issuance of a search warrant. United States v. Dean, 24 Fed. Appx. 929, 2001 WL 1564049 (10th Cir. Dec. 1, 2001)(unpublished op.), cert. denied,  535 U.S. 977 and 535 U.S. 1009 (2002).  The court concluded that the district court did not clearly err in finding that the absence of the issuing Magistrate Judge's initials on the date changed on the warrant was insufficient to require suppression of the evidence obtained in the search.  Several circuits have held that "minor clerical errors generally are not fatal to a search warrant." United States v. Walker, 534 F.3d 168, 172 (2nd Cir. 2008)(citing cases).  The exclusionary rule was adopted to deter unlawful searches by police, not to punish the errors of judges. Illinois v. Gates, 462 U.S. 213, 263 (1983)(White, J., concurring in judgment).  The Supreme Court has recognized that a "mere technical mistake or typographical error" is not sufficient to render a warrant constitutionally invalid, but that a warrant which is "obviously deficient" in describing the items to be seized will be regarded as an invalid warrant. Groh v. Ramirez, 540 U.S. 551, 558 (2004).  See Massachusetts v. Sheppard, 468 U.S. 981, 990-991 (1984)(holding clerical errors do not require suppression of evidence obtained pursuant to search warrant).  The facts presented

by Petitioner in support of his motion to suppress and direct appeal are consistent with the trial court's finding that a typographical error occurred in the search warrant authorizing a search of Petitioner's business. This error does not adversely affect the validity of the warrant.

Additionally, law enforcement officers discovered the written rules and conditions of Petitioner's probation during the search of his and his brother's business.[2] The rules and conditions included Petitioner's waiver of his Fourth Amendment rights in connection with a search of his person, residence, or vehicles where law enforcement officers had a reasonable suspicion of Petitioner's involvement in criminal activity. TR 31-32. Marijuana and scales were seized during the search of the business. An exception to the Fourth Amendment's warrant and probable-cause requirements "authorizes warrantless searches without probable cause (or even reasonable suspicion) by police officers with no responsibility for parolees or probationers when the totality of the circumstances renders the search reasonable." United States v. Warren, __ F.3d __, 2009 WL 1492546 (10th Cir. May 29, 2009)(citing Samson v. California, 547 U.S. 843 (2006), and United States v. Knights, 534 U.S. 112 (2001)). In Knights, the Supreme Court uphold a police detective's warrantless search of a probationer's apartment that was supported only by reasonable suspicion. The court reasoned that the probationer had a "significantly diminished ... reasonable expectation

---

[2]In Petitioner's reply, he asserts that only his brother owned the business that was searched on October 6, 2005. However, Petitioner admitted in his direct appeal that the business was jointly owned by Petitioner and his brother at the time of the search. Response, Ex. A, at 3. Thus, this assertion has no merit.

of privacy" and that the state had a countervailing significant interest "in apprehending violators of the criminal law." Knights, 534 U.S. at 120, 121. The Court recognized that

> the balance of these considerations requires no more than reasonable suspicion to conduct a search of this probationer's house. The degree of individualized suspicion required of a search is a determination of when there is a sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy interest reasonable.... When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interest is reasonable. The same circumstances that lead us to conclude that reasonable suspicion is constitutionally sufficient also render a warrant requirement unnecessary.

Id.

The marijuana and scales seized in the search of Petitioner's and his brother's jointly-owned business provided reasonable suspicion of Petitioner's involvement in illegal drug-related activities, and the Petitioner's probation agreement contained a provision allowing a search of Petitioner's residence based on reasonable suspicion of his involvement in criminal activity. TR 31-32. Therefore, the warrantless search of Petitioner's residence did not violate his Fourth Amendment rights. Petitioner has failed to show that the OCCA's rejection of his Fourth Amendment claim was contrary to or an unreasonable application of clearly established Supreme Court precedent. Accordingly, Petitioner is not entitled to habeas relief concerning this claim.

IV. Prosecutorial Misconduct

In ground two of the Petition, Petitioner asserts, as he did on direct appeal, that

prosecutorial misconduct deprived him of a fair trial. He relies on the prosecutor's closing argument in asserting the prosecutor improperly vouched for the credibility of law enforcement officers who testified at Petitioner's trial by stating they were just doing their jobs and had no reason not to testify truthfully. The OCCA applied a plain error standard of review to this claim because Petitioner did not object to the prosecutor's statements. The OCCA concluded that Petitioner had "shown no prejudice" with respect to his claim of prosecutorial misconduct and that "the improper comments" by the prosecutor "did not rise to the level of plain error." Response, Ex. 3, at 2.

"[W]hen a state court applies plain error review in disposing of a federal claim, the decision is on the merits to the extent that the state court finds the claim lacks merit under federal law." Douglas v. Workman, 560 F.3d 1156, 1171 (10th Cir. 2009). However, where, as in this case, the OCCA merely concluded that the prosecutor's comments "did not rise to the level of plain error" there is "no way to determine whether the court's review was or was not merits based." Id. at 1178. Under these circumstances, it is assumed that the state court's review was on the merits and § 2254(d) deference is applied. Id.

In this claim, Petitioner does not allege that the prosecutor's argument directly affected a specific constitutional right. Under these circumstances, "[h]abeas relief is available for prosecutorial misconduct only when the misconduct is so egregious that it renders the entire trial fundamentally unfair." Cummings v. Evans, 161 F.3d 610, 618 (10th Cir. 1998)(citing Donnelly v. DeChristoforo, 416 U.S. 637, 642-648 (1974)), cert. denied, 526 U.S. 1052 (1999). Cf. Torres v. Mullin, 317 F.3d 1145, 1158 (10th Cir.), cert. denied,

540 U.S. 1035 (2003)("Where prosecutorial misconduct directly affects a specific constitutional right such as the presumption of innocence or privilege against self-incrimination, a habeas petitioner need not establish that the entire trial was rendered unfair, but rather that the constitutional guarantee was so prejudiced that it effectively amounted to a denial of that right."). This determination is made "only after considering all of the surrounding circumstances, including the strength of the state's case." Malicoat v. Mullin, 426 F.3d 1241, 1255 (10th Cir. 2005), cert. denied, 547 U.S. 1181 (2006).

"It is error for the prosecution to personally vouch for the credibility of a witness." United States v. Harlow, 444 F.3d 1255, 1262 (10th Cir. 2006). An argument is improper vouching "'if the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurance of the witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony.'" United States v. Franklin-El, 555 F.3d 1115, 1125 (10th Cir. 2009)(quoting United States v. Magallanez, 408 F.3d 672, 680 (10th Cir. 2005))(internal quotation omitted).

In this claim, Petitioner asserts that certain statements by the prosecutor during closing argument impermissibly vouched for the credibility of the law enforcement officers' testimony. The full narrative shows that the prosecutor was directing the jury's attention to the jury instruction involving the evaluation of witness credibility:

> You have two seasoned officers on the stand who give [sic] you testimony about the items that were found ... in [Petitioner's] room and two officers on two separate occasions on that same

>night questioned [Petitioner], and he gave them the same story. They didn't question him at the same time. It was two separate occasions. He tells [officer] Glancy, "It's from my second job. I have to make more money to help pay bills." R. C. Daniel shows up after they find out there's stuff found in the room, and you heard him testify. He walks in and the [Petitioner] kind of giggles and says or he giggles and says, "Huh, yes, you caught me again." ... Investigator Daniel is doing his job. He was investigating criminal activity at that home. Not only criminal activity but drug trafficking. You have a defendant who took the stand today who has everything to lose. Take that into consideration when you are considering or whenever you look at [instruction] Number 10. That is a very important instruction, and you have two officers who are just doing their job. What motivation do they have not to tell the truth?

TR 218-219.

These comments by the prosecutor did not constitute impermissible vouching. The prosecutor's comments were directed toward the evidence presented at the trial. The prosecutor made no statements indicating a personal belief in the truthfulness of the officers' testimony. See Thornburg v. Mullin, 422 F.3d 1113, 1132 (10th Cir. 2005)(holding "it is not improper for a prosecutor to direct the jury's attention to evidence that tends to enhance or diminish a witness's credibility;" prosecutor's comment that witnesses "had no reason to lie" appeared to be based on the evidence and therefore was not improper vouching). Nor did the prosecutor indicate to the jury that he knew something more about a witness's credibility than was shown by the evidence presented at the trial. However, even assuming the prosecutor's comments constituted improper vouching, the comments do not entitle Petitioner to habeas relief. Considering the trial as a whole, including the substantial evidence of Petitioner's guilt presented at the trial, the comments in question were not

unfairly prejudicial. Petitioner has not shown that the OCCA's rejection of this claim was contrary to or an unreasonable application of clearly-established Federal law as determined by the Supreme Court, and Petitioner is not entitled to habeas relief with respect to this claim.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be denied. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court by   July 8th  , 2009, in accordance with 28 U.S.C. § 636 and LCvR 72.1. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States of America, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this   18th   day of   June  , 2009.

*signature*
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE